**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


| | |
|---|---|
| **JERAMEY R. BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )        **CIVIL NO. 07-cv-370-JPG** |
| | ) |
| **JOE GULASH,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |


**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff, an inmate at the Menard Correctional Center, brings this action for deprivations of

his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a

preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event,
> as soon as practicable after docketing, a complaint in a civil action in which a
> prisoner seeks redress from a governmental entity or officer or employee of a
> governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims
> or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief
> > may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such
> > relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which

relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Upon careful review of the

complaint and the supporting exhibits, the Court finds that no claim in the original complaint may

dismissed at this point in the litigation.

## THE COMPLAINT

Plaintiff was convicted of murdering Michael Keller, a resident of Granite City, Illinois. The conviction was obtained in the Circuit Court, Madison County, Illinois, and, based on Plaintiff's criminal record and the brutal and heinous nature of the murder, Plaintiff was sentenced to an extended 75-year prison term. *People v. Brown*, 831 N.E.2d 1113, 1115 (Ill. App. 2005 ). In October 2004, while incarcerated in the Stateville Correctional Center, Plaintiff filed a federal civil rights action "alleging a myriad of constitutional violations" that occurred while he was confined pending trial in the Madison County Jail (Jail). *See Brown v. Madison County*, No. 3:04-cv-824-MJR (S.D. Ill.). [1]

Plaintiff's conviction, however, was reversed on direct appeal after the state appellate court found that Plaintiff's Sixth Amendment right to counsel was violated because the State obtained incriminating evidence by using a jail house informant. *Id*. at 1119. The state criminal matter was remanded for a new trial. *Id*. at 1133. Accordingly, Plaintiff was again confined at the Jail. In February 2007, while confined at the Jail, Plaintiff filed a federal civil rights action alleging that he had been confined to administrative segregation; denied out-of-cell exercise; that his mail (both incoming and outgoing) was photocopied and disappeared on a regular basis; that his telephone calls (including those with his attorneys) were monitored and recorded; that officers would bang on his cell walls and doors throughout the night; and that he was denied the right to fast during Ramadan. *See Brown v. Hertz*, 3:07-cv-117-GPM (S.D. Ill.). On threshold review, the Court found

---

[1]This action is stayed pending resolution of Plaintiff's state criminal case. *See Bowrn v. Madison County,* 3:04-cv-824-MJR (S.D. Ill., Order at Doc. 103, entered Sept. 14, 2007).

that the complaint asserted just one substantive claim - that these actions occurred in retaliation for Plaintiff filing the 2004 lawsuit.

In the instant complaint, Plaintiff again asserts claims that the conditions under which he was re-confined at the Jail violated his constitutional rights in a number of ways. Specifically, Plaintiff alleges that: (1) that he was denied the opportunity to fast during Ramadan and, therefore, he was unable to practice his Muslim faith; (2) that he was held in the segregation unit at the Jail for approximately 16 months without due process of law; (3) that he was being denied his First Amendment rights by restrictions placed on the types of books and magazines he can have delivered to him in the Jail; (4) that he was denied the opportunity for exercise; (5) that he was deprived of adequate sleep because he was awoken every half-hour at night and also during the day due to "incessant noise" purposefully made by Jail staff; (6) that the Jail has violated his "privacy rights" because Jail records include many false statements and entries concerning Plaintiff's behavior and that such false entries; (7) that the Jail's commissary overcharges inmates for hygiene items; (8) that the Jail monitors all of his telephone conversations - including conversations with his attorneys - and the Jail (and its telephone service provider) impose "exorbitant charges" on the collect calls he makes to persons outside of the Jail; (9) that his mail has been opened and copied and passed along to the police.

With regard to this last allegation, Plaintiff asserts Jail officials allowed Defendant Wells to photocopy all of Plaintiff's outgoing mail - including his legal mail - for the benefit of Madison County prosecutors (Defendants Mudge, Napp, and Buckley). Plaintiff further alleges that on January 26, 2007, based on a "false" affidavit by Defendant Wojtowicz (a Granite City detective investigating the murder), a warrant was obtained by Granite City police officers (Defendants

Wojtowicz and Nordstrom), Madison County prosecutors (Defendants Mudge, Buckley, and Napp), and the City of Granite City to seize a letter that Plaintiff had written on December 28, 2006, to his then girlfriend.

At the time, it appears Plaintiff's girlfriend was a patient at Lighthouse, a residential addiction treatment center located in Maryville, Illinois, operated by Chestnut Health Services. Upon being presented the warrant, the police and prosecuting attorneys were given the letter by Defendant Jones-Abecasis, Director at Lighthouse. Plaintiff alleges Wojtowizc, Nordstrom, and Kranzler (an officer with the Maryville police department) harassed and intimidated his girlfriend calling Plaintiff a "killer." Defendant alleges that since January 26, 2007, Defendant Jones-Abecasis has withheld all of Plaintiff's letters to his girlfriend on the basis that Plaintiff is not supportive of her addiction rehabilitation attempt. Furthermore, Plaintiff contends that even after his girlfriend was released from Lighthouse she has refused to communicate with Plaintiff.

Based on the allegations of the complaint, the Court finds it convenient to divide Plaintiff's *pro se* action into ten counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Against Defendants Gulash, Hertz, Hollenbeck, Lakin, Fritschle, Fischer, Besson, and Madison County for violating Plaintiff's right to freely exercise his religion in violation of the First Amendment by denying Plaintiff the opportunity to fast during Ramadam.

**COUNT 2:** Against Defendants Gulash, Hertz, Hollenbeck, Lakin, Fritschle, Fischer, Besson, McGuire, Gilbert, and Madison County for violating Plaintiff's right to Due Process of law by confining him in administrative segregation for sixteen months.

**COUNT 3:** Against Defendants Gulash, Hertz, Hollenbeck, Fritschle, Fischer, Besson, Gilbert, and Madison County for violating Plaintiff's First Amendment rights

4

by denying him magazines and books.

**COUNT 4**: Against Defendants Gulash, Hertz, Hollenbeck, Lakin, Fritschle, Besson, Gilbert, and Madison County for depriving Plaintiff of Due Process of law by denying Plaintiff adequate exercise.

**COUNT 5:** Against Defendants Gulash, Hertz, Hollenbeck, Lakin, Fritschle, Fischer, Besson, Stephenson, Shaake, Pyatt, Hill, Hugh, Moore, Richert, Spurgeon, Hare, Werner, McNaughton, Lemarr, Thompson, Hartsoe, Collman, Unknown Party (Travis), Richert, Unknown Party (maintenance man), Gilbert, and Madison County for denying Plaintiff Due Process of law by subjecting him to conditions amounting to punishment - specifically loud noises depriving Plaintiff of adequate sleep.

**COUNT 6:** Against Defendants Gulash, Hertz, and Madison County for violating Plaintiff's privacy rights by failing to maintain adequate records concerning Plaintiff's conduct while detained in the Jail.

**COUNT 7**: Against Defendants Hertz, Madison County, Pfaff, and Keefe Commissary Network for violating Plaintiff's Due Process and Equal Protection rights by charging excessive prices in the commissary.

**COUNT 8**: Against Defendants Gulash, Hertz, Wells, Napp, Buckley, Mudge, Gilbert, and Madison County for violating Plaintiff's constitutional rights by monitoring Plaintiff's telephone calls - even telephone calls with his attorneys.

**COUNT 9**: Against Defendants Invision Telecom, Unknown Party, and Madison County for for violating Plaintiff's Due Process right by charging excessive prices and fees for making telephone calls from the jail.

**COUNT 10**: Against Defendants Gulash, Hertz, Wells, Lakin, Fritschle, Besson, Napp, Buckley, Mudge, Wojtowicz, Nordstrom, City of Granite City, Krantzler, City of Maryville, and Madison County for reading and copying Plaintiff's outgoing mail - including his legal mail - in violation of Plaintiff's rights.

## DISCUSSION

At the outset, the Court notes that the actions alleged in Counts 1, 2, 4, 5, 8, and 10, appear

to be factually related to the retaliation claim being asserted by Plaintiff in *Brown v. Hertz*, No. 3:07-

cv-117-GPM. That is, the individual actions alleged in Counts 1, 2, 4, 5, 8, and 10 of the instant

complaint appear to be the same actions which are alleged to have been taken as retaliation for the filing of the 2004 lawsuit in Case No. 3:07-cv-117-GPM. No consideration appears to have been given in Case No. 3:07-cv-117-GPM as to whether these actions - standing alone (absent retaliation) - may state a claim for relief. This Court, therefore, analyzes each Count to determine whether - absent retaliation - a colorable § 1983 claim is alleged.

### A. Count 1 (religious meals).

A detainee's right to exercise his religion "does not evaporate entirely when he enters a jail." *See Tarpley v. Allen County, Indiana*, 312 F.3d 895, 898 (7th Cir. 2002) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)). However, the detainee's right "is not unfettered." *Tarpley*, 312 F.3d at 898. Prison restrictions that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a legitimate penological objective. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). Based on these standards, Plaintiff's claim that Defendants Gulash, Hertz, Hollenbeck, Lakin, Fritschle, Fischer, Besson, and Madison County violated his First Amendment rights by denying him the opportunity to fast cannot be dismissed at this time.

### B. Count 2 (Due Process: confinement in segregation).

Under the Due Process Clause, people who have not been convicted of a crime may not be punished at all. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee, however, may be detained pending trial and may be subjected "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell*, 441 U.S. at 536-37. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without

6

more, amount to 'punishment.'" *Id.* at 539. The complaint suggests that Plaintiff's prior behavior while detained in the Jail was a legitimate reason to confine Plaintiff in administrative segregation instead of general population. Additionally, the Court assumes that a detainee whose conviction has been reversed and whose case has been remanded back to the trial court may pose a greater threat to Jail security because conviction and a lengthy prison sentence are no longer mere abstract possibilities. But, at this point, it is not entirely clear why Plaintiff was confined in administrative segregation at the Jail for such a long period of time and, therefore, Count 2 survives threshold review.

### C. Count 3 (First Amendment: denial of reading materials).

Plaintiff alleges that he was denied delivery of various magazines (Stuff, FHM, Maxim, XXL, Source, GQ, Lowrider, DUB, Vibe, and Sports Illustrated Swimsuit Edition) because they were deemed pornographic. Additionally, Plaintiff asserts that a legal book sent to him by his attorney (Protecting Your Health and Safety: A Litigation Guide for Inmates) was also not delivered to him. Finally, Plaintiff alleges that his request for delivery of religious books (sunna and hadith) and for self-help educational books were all denied.

Although Plaintiff's confinement does not result in a forfeiture of his federal constitutional rights, *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), the fact of confinement and the needs of the facility holding Plaintiff does impose limitations on Plaintiff's constitutional rights, including Plaintiff's First Amendment rights. *See Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Under *Turner v. Safley*, 482 U.S. 78, (1987), restrictions on a prisoner's First Amendment rights will be upheld if the restriction is "reasonably related to a legitimate penological interest." *Id*. at 89. At this stage of the proceedings, the Court is unable to conclude whether the restrictions placed on

Plaintiff's magazines, religious, and legal materials were reasonably related to legitimate penological interests or not. Therefore, Count 3 survives threshold review and should not be dismissed at this time.

### D. Count 4 (denial of exercise).

Plaintiff claims that he was deprived of out of cell exercise time during the 16 months he was held in segregation. The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986). This is more likely to occur when the denial of exercise is extreme and prolonged. *Harris*, 839 F.2d at 1236. Following these standards, Count 4 survives threshold review and should not be dismissed at this time.

### E. Count 5 (Due Process: deprivation of adequate sleep).

Plaintiff alleges that "daily and every night" for the entire 16 months he has been held in administrative segregation, the Defendants have "deliberately and maliciously" awakened Plaintiff every 30 minutes by deliberately making loud and incessant noises. As a result of his "sleep deprivation," Plaintiff contends that he suffers from unspecified health and psychological issues.

Although claims brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation." *Board v. Farnham*, 394 F.3d 469, 478

(7th Cir. 2005). In the Eighth Amendment context, excessive noise on a nightly basis which interrupts or prevents sleep states a claim for a constitutional infringement. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (1996). Therefore, Count 5 of the complaint survives threshold review and should not be dismissed at this time.

### F. Count 6 (privacy right: failure to maintain accurate records).

In Count 6, Plaintiff alleges that there is unspecified "false information" in the Jail's records and that such information may be used to affect in which prison Plaintiff is subsequently incarcerated. Prisoners have a limited due process right to have erroneous or derogatory information expunged from their files if the information is likely to be relief on in denying the prisoner a protected liberty interest (such as good time credits). Plaintiff, however, does not have a protected right to be housed in any particular prison or to any particular security classification. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992); *see also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Therefore, Count 6 should be dismissed pursuant to 28 U.S.C. § 1915A.

### G. Count 7 (Due Process and Equal Protection: excessive commissary prices).

Plaintiff's complaint alleges that Defendant Hertz eliminated all food items from the Jail's commissary shelves shortly after becoming Sheriff. Plaintiff finds this objectionable for two reasons. First, in order to maintain revenue from the commissary, Defendants Pfaff and Keefe Commissary Network raised prices on all remaining non-food items. Plaintiff alleges that the prices charged for the non-food items in the Jail's commissary are three to four times more than the same items in local markets. Second, Plaintiff asserts that Defendant Hertz cut back on food portions at the same time he eliminated food items from the commissary. Thus, inmates have been unable to

supplement Jail meals with food purchases from the commissary.

With regard to commissary prices, Plaintiff has no federal constitutional right to purchase items (food or non-food) from a commissary at all. *See Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("we know of no constitutional right of access to a prison gift or snack shop"); *Hopkins v. Keefe Commissary Networks Sales*, 2007 WL 2080480, at *5 (W.D. Pa. 2007) ("Inmates have no federal constitutional right to be able to purchase items from a commissary"); *Torres v. Droun*, No. 01 Civ. 1844(DJS)(TPS), 2004 WL 721729, at *7 (D.Conn. Mar. 30, 2004) ("The plaintiff has no constitutional right to purchase items from the commissary or outside vendors"); *Bagwell v. Brewington-Carr*, No. 97-714-GMS, 2000 WL 1239960, at *3 (D.Del. Aug. 25, 2000) ("while incarcerated [plaintiff] does not have a constitutional right to purchase potato chips and soda pop"). Because Plaintiff does not have a federal constitutional right to purchase commissary items, he has no right to purchase commissary items at a particular price or to have Defendants restrained from charging exorbitant prices. *Hopkins*, 2007 WL 2080480, at *5 (citing, *French v. Butterworth*, 614 F.2d 23, 25 (1st. Cir. 1980); *McCall v. Keefe Supply Co.*, 71 Fed. Appx. 779, 780 (10th Cir. 2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim).

Furthermore, there is no allegation that Plaintiff is being treated differently from other prisoners with respect to commissary pricing. To be sure, Plaintiff complains that he is being treated differently than persons who are not detained in a Jail, but that difference is fatal to Plaintiff's equal protection claim. As noted by the Seventh Circuit Court of Appeals, "prisons are costly to build, maintain, and operate, and . . . residents are not charged for their room and board." *Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001). In short, non-detained persons are not similarly situated

to prisoners detained in a Jail. State and local governments are not legally obligated - as it is with Jail detainees - to provide adequate food, clothing, shelter, and medical attention for non-detained citizens. The "combination of taxes and user charges the state . . .[uses to cover] the expense of prisons is hardly an issue for federal courts to resolve." *Id.* As such, on its face, the complaint fails to state a claim for an equal protection violation.

With regard to the alleged reduction of meal portions, Plaintiff does not contend that the resulting meals are nutritionally inadequate. Plaintiff's complaint states:

> Plaintiff only receives (2) donuts for breakfast with (1)one milk, a warm lunch with milk, and a plain lunch meat sandwich with (3) cookies and a handful of chips with juice.

Thus, Plaintiff's complaint indicates that he's receiving three meals a day (although, confusingly, he refers to two of the meals as "lunch"). Plaintiff also states that there is a 14 hour time span between breakfast and "dinner," but as anyone who has ever dieted knows, there is a difference between experiencing "hunger" and nutritional insufficiency. Thus, Plaintiff's complaint fails to allege that he is being deprived of his Due Process right to adequate food. Even if the complaint did state such a claim, however, the claim would only be against Defendants Hertz and Madison County because there is no indication that Defendants Pfaff and Keefe Commissary Network were in any way personally and directly responsible for reducing the size of the meals served at the Jail.[2] For the reasons stated above, Count 7 of the complaint should be dismissed pursuant to § 1915A.

---

[2]Indeed, Defendants Pfaff and Keefe Commissary Network would stand to gain from a reduction in meal sizes only if the Jail's commissary continued to sell food items which, of course, they were prevented from doing by Defendant Hertz.

**H. Count 8 (monitoring telephone calls).**

The monitoring of telephone conversations made by detainees raises Fourth Amendment concerns and, when the conversations occur between a detainee and his attorney, implicates the detainee's Sixth Amendment right to effective assistance of counsel. The Fourth Amendment issues associated with such monitoring, however, are not insurmountable. To invoke the Fourth Amendment's protection, Plaintiff must establish a legitimate expectation of privacy in his telephone calls. *Katz v. United States*, 389 U.S. 347 (1967). It is well settled that the fact of detention lowers the quantum of privacy a detainee can legitimately expect. *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984). When balanced against the legitimate governmental interests in the safe and secure operations of a Jail, however, the detainee's (diminished) expectation of privacy yields the conclusion that the Fourth Amendment does not protect his telephone conversations with non-confined persons. *Cf. United States v. Sababu*, 891 F.2d 1308, 1329-30 (7th Cir. 1989) (a non-confined person's telephone conversations with a confined prisoner were not protected by the Fourth Amendment). To the extent that Count 8 alleges a violation of the Fourth Amendment, it should be dismissed.

Plaintiff's Sixth Amendment claim appears to stand on firmer ground. Inmates must have a reasonable opportunity to seek and receive the assistance of counsel. *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). Private communication with an attorney is a meaningful part of that process, *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980), and the privacy accorded to the attorney-client relationship must exist even in the prison context. *Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir. 1973). Further, the required privacy is lost in the presence of a third party. *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997). While a jail may limit inmate access to attorneys, unjustified

obstruction of the right to representation is impermissible. *Procunier*, 416 U.S. at 419. Plaintiff

alleges that at least some of his attorneys are located in Chicago, Illinois - some distance from

Madison County. Again, a regulation which impinges an inmate's constitutional rights must be

"reasonably related to a legitimate penological interest" in order to be valid. *Turner,* 482 U.S. at 89.

At this point, it is unclear whether the monitoring of Plaintiff's telephone calls with his attorneys

is reasonably related to a legitimate penological interest.[3] Therefore, the Sixth Amendment claims

in Count 8 should not be dismissed at this time.

### I. Count 9 (excessive telephone charges).

As with Plaintiff's claim concerning commissary prices, the Court finds that Plaintiff's claim

concerning the fees and costs associated with making calls from the Jail do not state cause of action.

*See Arsberry*, 244 F.2d at 564 (excessive telephone charge did not implicate prisoner's First

Amendment rights). Moreover, the Court notes that Plaintiff's complaint concerns *collect* calls he

makes from prison and, therefore, these fees and costs are not even imposed upon (or, presumably)

paid Plaintiff. Therefore, Count 9 of the complaint should be dismissed.

### J. Count 10 (reading and copying outgoing mail - including legal mail).

Inmates have a First Amendment right both to send and receive mail, but that right does not

preclude prison officials from examining mail to ensure that it does not contain contraband.

*Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). While the Jail may have a right to

---

[3]The Court notes that on June 27, 2008, the Honorable Donald G. Wilkerson, United States Magistrate Judge, entered an order granting Plaintiff's Application for Confidential Unmonitored Attorney-Client Communications in *Brown v. Madison County,* No. 3:04-cv-824-MJR (S.D. Ill. Order at Doc. 117, entered June 27, 2008). Under the terms of that order, Plaintiff is allowed to speak with his attorney by phone at least once per week for at least thirty minutes without recording or monitoring the phone call.

examine Plaintiff's outgoing legal mail, it is not entirely clear whether that includes the ability of

the Jail to copy outgoing mail and to provide the copies to police and prosecutors. Moreover, an

inmate's legal mail, however, is entitled to even greater protection because of the potential for

interfering with Plaintiff's Sixth Amendment rights.

Plaintiff's claim against Defendant Jones-Abecasis, however, should be dismissed. To state

a claim under § 1983, Plaintiff must allege deprivation was committed by a person acting under

color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988). Defendant Jones-Abecasis is a private,

non-governmental actor. The actions of a purely private party does not raise to the level of state

action. Plaintiff does not allege - and there is no indication that - this Defendant was acting in

concert with state actors. To the contrary, like a friend or parent, Defendant Abecasis is only alleged

to interfered with Plaintiff's letters to his girlfriend because she thought that the communication

would undermine the girlfriend's rehabilitation efforts.

Plaintiff's claims against the City of Granite City and the City of Maryville should also be

dismissed. Governmental entities cannot be held liable for the unconstitutional acts of their

employees unless those acts were carried out pursuant to an official custom or policy.

*Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir. 2006). *See also Monell v. Dep't of Soc.*

*Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The 'official policy' requirement

for liability under § 1983 is to 'distinguish acts of the *municipality* from acts of *employees* of the

municipality, and thereby make clear that municipal liability is limited to action for which the

municipality is actually responsible.' " *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d

509, 515 (7th Cir. 2007) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292,

89 L.Ed.2d 452 (1986)). *See also Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007)

("Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.' "(quoting *Fairley v. Fermaint,* 482 F.3d 897, 904 (7th Cir. 2007))). Plaintiff does not allege that the alleged actions were taken pursuant to the policy and custom of either the City of Granite City or the City of Maryville.[4] With the exception of Plaintiff's claim against Jones-Abecasis, the City of Granite City and the City of Maryville, Count 10 should not be dismissed at this time.

### DISPOSITION

Counts 6, 7, 8 (Fourth Amendment claim only), and 9 are **DISMISSED**, with prejudice, pursuant to 28 U.S.C. § 1915A. Additionally, Plaintiff's claims in Count 10 against Defendants Jones-Abecasis, the City of Granite City, and the City of Maryville are also dismissed pursuant to 28 U.S.C. § 1915A. Plaintiff is advised that the dismissal of these claims will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). All pending motions are **DENIED** as moot.

Because there are no pending claims against them, Defendants Pfaff, Keefe Commissary Network, Unknown Party (any and all unknown defendants), Invision Telecom, Jones-Abecasis, City of Granite City, and City of Maryville are **DISMISSED** from this action

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **GULASH, HERTZ, HOLLENBECK, LAKIN, FRITSCHLE, FISCHER, BESSON, MADISON COUNTY, MCGUIRE, GILBERT, STEPHENSON, SHAAKE, PYATT, HILL, HUGH,**

---

[4]In contrast, Plaintiff does allege that actions are the policies and custom of the Madison County Jail which is operated by Madison County.

**MOORE, BOB RICHERT, SPURGEON, HARE, WERNER, MCNAUGHTON, LEMARR, THOMPSON, HARTSOE, COLLMAN, CRAIG RICHERT, WELLS, NAPP, BUCKLEY, MUDGE WOJTOWICZ, NORDSTROM, and KRANTZLER**.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **GULASH, HERTZ, HOLLENBECK, LAKIN, FRITSCHLE, FISCHER, BESSON, MADISON COUNTY, MCGUIRE, GILBERT, STEPHENSON, SHAAKE, PYATT, HILL, HUGH, MOORE, BOB RICHERT, SPURGEON, HARE, WERNER, MCNAUGHTON, LEMARR, THOMPSON, HARTSOE, COLLMAN, CRAIG RICHERT, WELLS, NAPP, BUCKLEY, MUDGE WOJTOWICZ, NORDSTROM, and KRANTZLER** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.  Service shall not be made on **UNKNOWN PARTY (TRAVIS) or UNKNOWN PARTY (MAINTENANCE WORKER)** until such time as Plaintiff has identified theses Defendandants by name on a USM-285 form and in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the

Marshal with the Defendant's last-known address upon issuance of a court order which states that

the information shall be used only for purposes of effectuating service (or for proof of service,

should a dispute arise) and any documentation of the address shall be retained only by the Marshal.

Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the

court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for

waivers of service that are returned as undelivered as soon as they are received.  If a waiver of

service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the

request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by

counsel, upon that attorney, a copy of every further pleading or other document submitted for

consideration by this Court.  He shall include with the original paper to be filed with the Clerk of

the Court a certificate stating the date that a true and correct copy of any document was mailed to

defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not

been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**Dated: July 16, 2009.**

    **s/ J. Phil Gilbert**
    **U. S. District Judge**