UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JERAMEY R. BROWN,

    Plaintiff,

v.

JOE GULASH, *et al.*,

    Defendants.

Case No. 07-cv-370-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendants Besson and Fritschle (Doc. 176). Plaintiff Jeramey R. Brown has responded to the motion (Doc. 220), and Besson and Fritschle have replied to that response (Doc. 237).

**I.**    **Background**

Brown was convicted of murdering Michael Keller, a resident of Granite City, Illinois. The conviction was reversed on appeal, and the case was remanded for a new trial. While awaiting a new trial, Brown was housed in the Madison County Jail from January 2006 until July 2008, the same place he had been housed prior to his conviction. Brown's complaints in this case arose from that detention. Specifically, Brown alleges that: (1) he was denied the opportunity to fast during Ramadan and, therefore, he was unable to practice his Muslim faith; (2) he was held in the segregation unit at the jail for at least 16 months without due process of law; (3) he was denied his First Amendment rights by restrictions placed on the types of books and magazines he could have delivered to him in the jail; (4) he was denied the opportunity for exercise; (5) he was deprived of adequate sleep because he was awoken every half-hour at night and also during the day due to "incessant noise" purposefully made by jail staff; (6) the jail has violated his "privacy rights" because its records include many false statements and entries

concerning Brown's behavior and that such false entries may be used to determine his prison placement; (7) the jail's commissary overcharges inmates for hygiene items; (8) the jail monitored all of his telephone conversations – including conversations with his attorneys – and the jail (and its telephone service provider) impose "exorbitant charges" on the collect calls he made from the jail; (9) that his mail has been opened and copied and passed along to the police. Brown is currently incarcerated at Menard Correctional Center.

On threshold review, the Court separated Brown's complaint into ten counts and disposed of a number of them. Besson and Fritschle are named in six of the remaining counts:

- **COUNT 1:** for violating Brown's right to freely exercise his religion in violation of the First Amendment by denying him the opportunity to fast during Ramadan;

- **COUNT 2:** for violating Brown's right to due process of law by confining him in administrative segregation for sixteen months;

- **COUNT 3:** for violating Brown's First Amendment rights by restricting his ability to have magazines and books;

- **COUNT 4**: for violating Brown's right to due process of law by denying him adequate exercise;

- **COUNT 5:** for violating Brown's right to due process by subjecting him to conditions amounting to punishment – specifically loud noises depriving Brown of adequate sleep; and

- **COUNT 10**: for reading and copying Brown's outgoing mail – including his legal mail – in violation of his rights.

II.   **Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the

evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

If the moving party is defending the claim at trial and does not have the burden of proof, it need not provide evidence negating the plaintiff's claim.  It is enough to point to the absence of evidence to support an essential element of the plaintiff's claim for which it carries the burden of proof at trial  *Celotex*, 477 U.S. at 322-23, 325.  Where the defendant has pointed to a lack of evidence for one of the essential elements of a plaintiff's claim, if the plaintiff fails to provide evidence sufficient to establish that element, there is no genuine issue of material fact.  *Celotex*, 477 U.S. at 322-23.

**III.     Relevant Facts**

Viewed in the light most favorable to Brown, the materials in the record establish the following relevant facts:

At all relevant times, Besson and Fritschle were employees of the Illinois Department of Corrections ("IDOC") Jail and Detention Standards Unit. As part of their official duties as criminal justice specialists, they inspected county and municipal jails annually to determine compliance with the Illinois County Jail Standards ("Jail Standards"), attempted to resolve inmate complaints and reviewed and investigated unusual occurrences at jails within their assigned geographical areas. Fritschle's assigned geographical area included Madison County; Besson was assigned to other counties in central Illinois. If a jail did not comply with the appropriate standards, the unit would inform the jail of the non-compliance, but had no authority to force it to come into compliance.

Besson also served as the acting supervisor of the unit for five months in 2006 and again beginning in June 2008. In that position, Besson was responsible for assigning inmate complaint letters to criminal justice specialists for investigation and review.

While he was confined in the Madison County Jail ("Jail") prior to his initial conviction, Brown was classified as a high-security inmate based on altercations he had had with other detainees and threats he had made to Jail personnel, all of which was perceived to threaten the security and order of the Jail.

After Brown's initial conviction was reversed, he was sent back to the Jail in January 2006 to await a new trial. At that time, he informed the Jail he was a Muslim, and the Jail provided him a pork-free diet in accordance with Muslim tenets. The Jail also continued to treat him as a security threat based on his behavior in his prior detention at that facility.

During this second period of detention in the Jail, Brown wrote letters to Besson and Fritschle complaining about the conduct of certain Jail employees, who are also named as co-defendants in this case.  Specifically, he complained that he was held in segregation for no reason; that he was denied out-of-cell recreation and access to the law library, TV and radio; that he was unable to receive books and magazines from home and bookstores; that he was unhappy with items available on the commissary and their prices; that he wanted his dinner served after sunset so he could observe Ramadan; that his cell had not been sprayed for insects; that jail staff would not make photocopies for him; that his legal mail was being opened and read; and that his calls with his attorneys were being monitored.  Brown's letters were forwarded to Fritschle for investigation.

Fritschle investigated Brown's complaints by interviewing him and Jail staff.  Brown told her he was a Muslim and showed her some kind of documentation of his faith, and she informed him she would advise Jail personnel his meal needs would need to be accommodated.  She found the following:

- Jail Superintendent Joseph Gulash informed her that Brown was being held in segregation because of his high security status, not for disciplinary reasons, which Jail personnel thought was necessary for the safety of other detainees and Jail personnel.

- The dayroom area of the Jail provided sufficient space for recreation.

- Brown had received numerous legal books he had requested as well as new books that were circulated around the Jail.

- Brown's other complaints about receiving books and magazines were not covered by the Jail Standards.

- Information from Jail personnel indicated Brown was a Christian or had no religious preference, and did not substantiate that Brown was a practicing Muslim, as he had told Fritschle when she talked to him.

- Gulash informed her that Brown's legal mail was not being opened or read.

Fritschle concluded Brown's claims could not be substantiated. Accordingly, she prepared a letter to Brown dated August 14, 2006, to tell him of her conclusions. Besson signed the letter and sent a copy to Madison County Sheriff Robert Hertz.

Two days later, Brown wrote Besson to inform him of several factual mistakes underlying Besson's letter, namely, (1) that Brown was, in fact, a practicing Muslim as reflected in IDOC records, and that Jail personnel knew this and had accommodated his special diet request since January 2006, (2) that his cell had no dayroom for exercise, (3) that he had not received new books and (3) that law books were not available to him. In addition, he raised numerous other complaints about Jail conditions. Neither Besson nor Fritschle changed their August 14, 2006, letter based on the letter received from Brown.

Brown continued to complain about the Jail conditions, and Fritschle continued to investigate. She prepared another letter, dated December 7, 2006, specifically addressing Brown's complaints about the lack of spraying for insects within his cell (she was informed by Jail Superintendent Gulash that the area around his cell had been sprayed in August and November 2006), Jail personnel's unwillingness to make photocopies for Brown (no rule requires them to), the Jail's monitoring of his phone calls (the Jail Standards allow monitoring except for pre-arranged legal calls) and his treatment as a high security risk (by virtue of his murder charge). A supervisor other than Besson signed this letter and sent a copy to Sheriff Hertz.

In January 2007, Brown again sent a complaint letter, and Fritschle again investigated. She prepared a third letter, dated March 16, 2007, specifically addressing Brown's complaints about the opening and reading of his mail and the monitoring of his phone calls. The letter

informed Brown of the applicable Jail Standards and stated the investigation found no violations. Again, a supervisor other than Besson signed this letter and sent a copy to Sheriff Hertz

Brown filed this lawsuit against Besson and Fritschle, in their individual and official capacities, because he believes that Jail personnel violated his constitutional rights and that Besson and Fritschle did nothing to stop it. Brown seeks compensatory and punitive damages as well as injunctive relief.

Besson and Fritschle ask the Court to grant them summary judgment on the basis that they had no personal involvement in decisions about how to run the Madison County Jail, they are immune from Brown's official capacity claims by virtue of the Eleventh Amendment, and they are entitled to qualified immunity for Brown's individual capacity claims. They also claim Brown is not entitled to injunctive relief since he is no longer housed at the Jail.

In response, Brown argues that Besson and Fritschle were personally involved in the deprivation of his constitutional rights because they advised the Jail that its treatment of Brown was acceptable. Brown concedes that he cannot prevail on any of his claims against the defendants in their official capacities or for injunctive relief, and the Court will accordingly grant summary judgment in favor of Besson and Fritschle on those claims. The Court therefore turns to Brown's individual capacity claims.

**IV. Analysis**

    A.    <u>Personal Involvement</u>

Brown contends Besson and Fritschle are responsible for the deprivation of his constitutional rights because they advised the offending defendants that their conduct complied with the Jail Standards, thus failing to stop or prevent the violations. In essence, Brown seeks to hold these defendants liable for the jail conditions created by others, but in § 1983 cases, there is

no vicarious liability for the acts of others. Traditionally, courts have held that liability can only be imposed on a defendant for the acts of others if the defendant knows about the unconstitutional conduct and facilitates, approves, condones or deliberately turns a blind eye to it. *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997); *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Under that standard, the defendant must act either knowingly or with deliberate, reckless indifference. *Lanigan*, 110 F.3d at 477; *Jones*, 856 F.2d at 992-93. A defendant is not personally involved if he is merely negligent, even grossly negligent, in failing to detect and prevent another's misconduct. *Lanigan*, 110 F.3d at 477; *Jones*, 856 F.2d at 992.

More recently, the Supreme Court has cast doubt on this standard by articulating an even stricter one in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). There, it held that a defendant can only be liable if a plaintiff establishes "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 1949. Thus, after *Iqbal*, turning a blind eye to a violation may not be enough to establish personal involvement of a defendant if the constitutional violation itself demands a different mental state.

In addition, even after *Iqbal*, the defendant's conduct must have been the cause of the constitutional violation. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Duncan v. Nelson*, 466 F.2d 939, 942 (7th Cir. 1972) (law enforcement officers who coerced confession were not proximate cause of plaintiff's incarceration where judge made independent but erroneous decision to admit coerced confession); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (bystander officer not liable where he had no realistic opportunity to

8

prevent force used by another officer), *cert. denied*, 130 S. Ct. 1936 (2010).

*Ortiz v. Turner*, 651 F. Supp. 309 (S.D. Ill. 1987), the case relied on by Besson and Fritschle, embodies these principles. In *Ortiz*, as in this case, a jail detainee sued state officials who were responsible for setting jail standards and annually determining jails' compliance with those standards. The detainee thought they should be held liable for their failure to detect violations in county jails, facilities which under Illinois law are committed to the management of county officials. *Id.* at 310-11. The state officials were required to report noncompliance to the appropriate county board and sheriff, and if the facility was not brought into compliance within six months, the director of IDOC could, but was not required to, petition the court for an order requiring compliance. *Id.* at 311. The *Ortiz* court concluded that the Illinois statute did not impose enforcement obligations on the defendants, so to hold them liable for a jail's noncompliance would be tantamount to vicarious liability, which § 1983 does not allow. *Id.* Additionally, the court held that the facts established no causal connection between the alleged inadequate inspection and the jail conditions. *Id.* Indeed, although the *Ortiz* court did not use "personal involvement" phraseology, it essentially found the state jail inspectors and their supervisors were not personally involved in unconstitutional jail conditions and did not cause those conditions by failing to detect and report them.

The case at bar is indistinguishable from *Ortiz*. Although this case deals with an updated version of the Illinois jail standards statute, 730 ILCS § 5/3-15-2, the relevant requirements are the same. In this context, a reasonable jury could not find that Besson or Fritschle were personally involved in creating or maintaining the Madison County Jail conditions about which Brown complains. Under the pre-*Iqbal* personal involvement standard, there is simply no evidence Fritschle knew about any unconstitutional conditions at the Madison County Jail when

she issued her findings. The evidence shows she relied on information provided by the jail and by Brown, and where that information conflicted, she believed the information she received from the jail. After her investigation, she concluded that no violation existed. Whether the jail provided inaccurate information, her investigation was negligent or her conclusions were erroneous makes no difference. There is simply no evidence from which a reasonable jury could find she or Besson knew of the unconstitutional conditions such that either of them could have facilitated, approved, condoned or turned a blind eye toward them.

Brown faults them for failing to change their finding when he pointed out their errors and omissions in his August 16, 2006, letter. While Brown's letter may assert that the basis for Fritschle's assessment was incorrect, it does not establish her knowledge of a constitutional violation at the time of her report, and it does not create any affirmative duty to correct the report that was, in her mind after an investigation, accurate at the time it was given.[1]

In addition, no reasonable jury could find based on the materials in the record that Besson and Fritschle caused any unconstitutional conditions at the Madison County Jail by failing to note and report a Jail Standards violation. Even if Besson and Fritschle had detected a Jail Standards violation or issued a corrected report showing such a violation, Illinois law gives them no enforcement power. The county sheriff is responsible for jail management, not Jail Standards Unit employees. *See* 730 ILCS § 125/0.01 *et seq*. Any enforcement of Jail Standards that might have occurred through a court order after a discretionary petition by the Director of IDOC six months later is too attenuated and speculative to support a finding that Besson and

---

[1]Because no reasonable jury could find Besson or Fritschle liable under the more lenient pre-*Iqbal* standards for personal involvement, the Court need not address the standard as articulated in *Iqbal*.

Fritschle caused any unconstitutional conditions.

Brown attempts to distinguish *Ortiz* but to no avail. He argues that Fritschle and Besson affirmatively advised jail personnel that the status quo was acceptable, whereas the defendants in *Ortiz* simply failed to conduct a proper investigation. This is a distinction without a difference. In fact, the cases are similar in that both times the defendant relied on assurances of the sheriff that were not true (if the evidence is viewed in Brown's favor) and, as a result, found no violation. That the defendants in this case informed the jail it found no violation does not distinguish it from *Ortiz*.

For these reasons, Besson and Fritschle are entitled to summary judgment on Counts 1, 2, 3, 4, 5 and 10.

B.      Qualified Immunity

Even if a reasonable jury could find Besson and Fritschle caused unconstitutional conditions at the Jail, Besson and Fritschle would be entitled to qualified immunity. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *accord Saucier v. Katz*, 533 U.S. 194, 206 (2001). It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950. The qualified immunity test has two prongs: (1)

11

whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 129 S. Ct. at 815-16; *see Saucier*, 533 U.S. at 201; *Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

If the evidence demonstrates that there may have been a constitutional violation, then the court should determine whether the right allegedly violated was clearly established at the relevant time. *Saucier*, 533 U.S. at 202. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201; *see McNair v. Coffey*, 279 F.3d 463, 465 (7th Cir. 2002). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950.

In this case, Brown has pointed to caselaw clearly establishing that, at the time of his detention, the conditions he alleges existed in the jail violated his constitutional rights. However, as noted above, Besson and Fritschle did not cause those conditions and are not responsible for them. Thus, the key inquiry for the purpose of qualified immunity analysis is whether, in the particular situation confronted by Besson and Fritschle, it would have been clear to a reasonable official that he or she was violating the Constitution by advising a county jail that an investigation – albeit an imperfect one – yielded no findings of a Jail Standards violation. Brown has pointed to no Supreme Court or Court of Appeals case so holding and, in fact, there is substantial authority that holds otherwise. *See Reid v. Kayye*, 885 F.2d 129 (4th Cir. 1989); *Bush v. Viterna*, 795 F.2d 1203 (5th Cir. 1986).

For these reasons, Besson and Fritschle are entitled to qualified immunity on Brown's claims against them in their individual capacities.

### V.     Conclusion

For the foregoing reasons, the Court **GRANTS** Besson and Fritschle's motion for summary judgment on Counts 1, 2, 3, 4, 5 and 10 (Doc. 176) and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.  Besson and Fritschle are terminated from this case.

**IT IS SO ORDERED.**
**DATED:  January 4, 2011**

>                                    s/ J. Phil Gilbert
>                                    **J. PHIL GILBERT**
>                                    **DISTRICT JUDGE**